**2016 UT App 104**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JARED THOMAS WHITAKER,
Appellant.

Memorandum Decision
No. 20141110-CA
Filed May 19, 2016

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 141401107

Margaret P. Lindsay and Douglas J. Thompson,
Attorneys for Appellant

Sean D. Reyes, Brett J. DelPorto, and William M.
Hains, Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES GREGORY K. ORME and KATE A.
TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1     Defendant Jared Thomas Whitaker appeals his conviction
of aggravated sexual abuse of a child, a first-degree felony. *See*
Utah Code Ann. § 76-5-404.1 (LexisNexis 2012). Defendant
contends that the evidence presented at trial was insufficient to
support his conviction because it did not prove beyond a
reasonable doubt that he had acted "with the intent to arouse or
gratify the sexual desire of any person." *See id.* § 76-5-404.1(2).
We conclude that the evidence was insufficient to support an
inference of intent beyond a reasonable doubt and therefore
reverse Defendant's conviction.

BACKGROUND

¶2 On appeal from a bench trial, we view the evidence in the light most favorable to the trial court's findings. *Layton City v. Carr*, 2014 UT App 227, ¶ 7, 336 P.3d 587.

¶3 Defendant was the stepfather of Jane,[1] who was twelve years old at the time of the events leading to this case. Defendant also had three children with Jane's mother, ranging in age from six to nine years old. After Defendant and Jane's mother separated, Jane and her half-siblings regularly visited Defendant on weekends and holidays. By all accounts, Jane considered Defendant her father, as she was raised alongside Defendant's biological children. At the time of this incident, around Thanksgiving 2013, Defendant was living at his brother's home, and Jane and her half-siblings came to visit him.

¶4 On the night in question, Jane was asleep in Defendant's bed, located in a basement laundry room, when he arrived home after working late. Defendant's children occasionally slept in his bed, and it was not uncommon for Defendant to come home from work and find Jane or another child sleeping in his bed. Jane testified at trial that, on this night, she saw Defendant take his shirt off and get into the bed. Defendant and Jane were facing away from each other, back to back. After an undetermined amount of time elapsed, Defendant took Jane's hand and slowly put it between his legs, "like on his private part." Jane's "palm was up" and the position "wasn't very comfortable." Jane described what she felt as "warm" and "soft."[2] Jane testified

---

1. We employ the pseudonym Jane to protect her privacy.

2. The prosecutor asserted in the opening statement that the contact had been "skin to skin" and that Defendant "moved his hand up to where he was touching [Jane's] breasts." However, no testimony was elicited supporting either of these claims and

(continued…)

that, after Defendant moved her hand, he took his hand away from Jane's and did not continue to hold Jane's hand in place. Jane also stated that her hand was between Defendant's legs for "I think a minute, maybe."[3] Jane then got up from the bed, causing Defendant to stop snoring, went to a bathroom upstairs, and "flushed the toilet so he would think that I went to the bathroom." When Jane returned to the room, "[H]e asked me if I had a bad dream . . . . [A]nd then he was playing a game on his phone, and then I just went back to sleep."

¶5     In December of 2013, Jane's mother told her that she and her siblings were going back to visit Defendant. Jane told her mother what had happened and said she did not want go, because she "didn't want it to happen again." Jane's mother contacted the police, who arrested Defendant.

¶6     At the resulting bench trial, Defendant testified that he worked long hours around the relevant time period, including two shifts on the day in question. He also testified that he had slept for only three or four hours on the night before the incident occurred. Defendant claimed that he had been extremely tired and that he had no recollection of the events alleged by Jane. According to him, the only thing he remembered after lying

_____

(…continued)

no findings were entered regarding them. Nevertheless, Defendant's presentencing report repeated them as fact.

3. During direct examination of Jane, defense counsel asked the trial court to repeat Jane's response to a question because counsel had not heard her answer. According to the trial transcript, Jane had testified that Defendant had not held her hand on his penis. The court characterized this testimony as "she said that he—that he didn't hold her hand, it just—she said he just kept doing it, is what she said." It is not clear what the trial court believed Jane had testified Defendant "kept doing."

down was eating "cereal in the morning" with his daughters. On cross-examination, the prosecutor sought to impeach Defendant's credibility. The prosecutor elicited admissions from Defendant that he had not always been truthful to Jane about his prior drug use.[4] Further, he acknowledged that he had told Jane that he used "medicine" instead of telling her about his use of illegal drugs.[5]

¶7 The trial court, acting as the factfinder, convicted Defendant as charged. In its written findings, the court found that Jane was a credible witness because she testified in "substantial detail" about the evening in question. When the trial court addressed the possibility that Defendant had been asleep during the incident, the court wrote that "there was no substantial indication he was snoring while the event occurred or even [if] he was, snoring is easy to fake and snoring would not impeach her characterization of the event." Furthermore, the court relied on the lack of evidence of Jane's motive to lie, stating that "no one could come up with any motive for her to fabricate her testimony, which [is] unusual in a case like this where you do have divorced parents involved, and typically there's plenty of motive to go around. But in this case, there was no motive."

¶8 The trial court further found Defendant's testimony not credible. The court commented that the prosecutor had impeached Defendant's testimony by eliciting the fact that

---

4. Neither Defendant nor the State alleged that Defendant was under the influence of drugs at the time of the incident.

5. The prosecutor's questions appear to have been calculated to elicit responses suggesting a lack of candor in an unrelated context for the sole purpose of impeaching Defendant's credibility. Yet a parent's mischaracterization of his drug or alcohol use in conversation with his children hardly seems a reliable bellwether of general credibility.

Defendant had lied about his prior drug use and had even told Jane that he was taking "medicine" rather than drugs. The court noted, "As this was a case involving only two witnesses, the victim and the defendant, with little direct evidence to corroborate for the testimony of either, the result must necessarily turn on credibility." The court did not discuss intent, a requisite element of the crime, in its findings. Defendant timely appeals.

ISSUE AND STANDARD OF REVIEW

¶9 The single issue that requires resolution on appeal is whether the evidence presented at trial was sufficient to support Defendant's conviction. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Singh*, 2011 UT App 396, ¶ 5, 267 P.3d 281 (brackets, ellipsis, citation, and internal quotation marks omitted).

ANALYSIS

¶10 "We recognize proof of a defendant's intent is rarely susceptible of direct proof and therefore the prosecution usually must rely on a combination of direct and circumstantial evidence to establish this element." *State v. Murphy*, 617 P.2d 399, 402 (Utah 1980). However, "'before we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime as charged from which the [factfinder] may base its conclusion of guilt beyond a reasonable doubt.'" *Spanish Fork City v. Bryan*, 1999 UT App 61, ¶ 5, 975 P.2d 501 (alteration in original) (quoting *Murphy*, 617 P.2d at 402). "'[A] guilty verdict is not legally valid if it is based solely on inferences that

give rise to only remote or speculative possibilities of guilt.'" *Id.* (quoting *State v. Workman*, 852 P.2d 981, 985 (Utah 1993)).

¶11 The State bears the burden of proving each and every element of a criminal offense beyond a reasonable doubt. *See State v. Crowley*, 2014 UT App 33, ¶ 7, 320 P.3d 677; *see also State v. Herrera*, 895 P.2d 359, 368 (Utah 1995). The elements of aggravated sexual abuse of a child relevant to this case are that (1) the defendant was in a position of special trust in relation to the victim, (2) the victim was a child under the age of fourteen at the time of the offense, (3) the defendant caused the victim to take indecent liberties with the defendant, and (4) the defendant acted "with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person." *See* Utah Code Ann. § 76-5-404.1(1)(b), (2), (4)(h) (LexisNexis 2012).

¶12 Defendant argues that the State failed to produce evidence sufficient to prove beyond a reasonable doubt that Defendant acted with the requisite intent. The State responds that intent was properly inferred from circumstantial evidence. The question before us is whether the trial court's implicit inference—that, beyond a reasonable doubt, Defendant acted with the intent to arouse or gratify the sexual desire of any person—is against the clear weight of the evidence.

¶13 "It is well established that intent can be proven by circumstantial evidence." *State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346 (citation and internal quotation marks omitted). "[Intent] may be inferred from the actions of the defendant or from surrounding circumstances." *State v. Murphy*, 674 P.2d 1220, 1223 (Utah 1983). "The factfinder . . . is entitled to draw all reasonable inferences from the facts and from the actions of the defendant." *State v. Cooley*, 603 P.2d 800, 802 (Utah 1979). "When intent is proven by circumstantial evidence, we must determine (1) whether the State presented any evidence that [the

defendant] possessed the requisite intent, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent." *Holgate*, 2000 UT 74, ¶ 21 (citation and internal quotation marks omitted).

¶14    Circumstantial evidence has routinely been used to prove specific intent. *See, e.g.*, *In re D.M.*, 2013 UT App 220, 310 P.3d 741 (affirming delinquency adjudication for sexual abuse of a child); *State v. Bair*, 2012 UT App 106, 275 P.3d 1050 (entering conviction for sexual abuse of a child); *State v. Singh*, 2011 UT App 396, 267 P.3d 281 (affirming conviction for sexual abuse of a child); *State v. Watkins*, 2011 UT App 96, 250 P.3d 1019 (affirming conviction for aggravated sexual abuse of a child), *rev'd on other grounds*, 2013 UT 28, 309 P.3d 209; *State v. Maness*, 2010 UT App 370U (affirming conviction for forcible sexual abuse); *State v. Tueller*, 2001 UT App 317, 37 P.3d 1180 (affirming conviction for sexual abuse of a child); *State v. Hall*, 946 P.2d 712 (Utah Ct. App. 1997) (affirming conviction for aggravated sexual abuse of a child). In each of these cases, circumstantial evidence existed from which intent to arouse or gratify sexual desire could reasonably be inferred with a basis in logic and human experience. For example, circumstantial evidence of intent has included expressions of love and kissing the victim, *Singh*, 2011 UT App 396, ¶ 9; entering a massage room early, moving a concealing drape, touching the victims' genitalia and breasts "during a massage procedure that should be performed without touching the genitalia," and lingering after administering a massage, *Maness*, 2010 UT App 370U, para. 4; being caught lying on top of the victim, holding her legs open and her panties down, in a bathroom stall, *Tueller*, 2001 UT App 317, ¶ 19; daring the victim to crawl under a futon before pulling down the victim's pants and touching the victim's testicles, *In re D.M.*, 2013 UT App 220, ¶¶ 2, 11; and entering the sleeping victim's room without a legitimate reason, kissing the side of the victim's head for three minutes, rubbing the victim's buttocks for two

minutes, and paying the victim, which payment was accompanied by instructions not to tell anyone about the money, *Watkins*, 2011 UT App 96, ¶¶ 3, 18, *rev'd on other grounds*, 2013 UT 28. Additionally, in both *Singh* and *Maness*, the existence of multiple victims (and consequently multiple similar acts) supported an inference of intent. *See Singh*, 2011 UT App 396, ¶ 9; *Maness*, 2010 UT App 370U, para. 4.

¶15    In contrast, here, the State relied entirely on Jane's testimony that Defendant had placed her hand on his penis and that Jane's hand remained there for up to a minute. As noted above, there was no testimony regarding skin-to-skin contact, *see supra* ¶ 4 note 2, no evidence that Defendant had in any other way acted suggestively or made suggestive comments to Victim, and no indication that Defendant had attempted to ensure Jane's silence.[6] Nor was there evidence that Defendant held Jane's hand in place or otherwise manipulated it. In short, the State produced no evidence beyond the physical act of moving Jane's hand—palm up—to Defendant's penis to satisfy the State's burden of proving beyond a reasonable doubt Defendant's intent to arouse or gratify the sexual desire of himself or any other person.

¶16    Moreover, the limited facts that were adduced at trial did not support every aspect of the State's opening statement, *see supra* ¶ 4 note 2, and the court did not identify what evidence it relied on to infer Defendant's intent. Instead, the trial court's findings of fact focused almost exclusively on the relative credibility of Jane and Defendant. The court stated that because there was little direct evidence to corroborate either Jane's or Defendant's testimony, "the result must necessarily turn on credibility." And the State had apparently impeached

---

6. The State elicited testimony from Jane that Defendant had given her a tablet computer for her birthday. Jane was unsure of whether she received the gift before or after the incident.

Defendant's general credibility in the eyes of the factfinder. *See supra* ¶ 6 & note 5. But even discounting Defendant's testimony that he had no memory of any events between going to bed that night and eating cereal the next morning, and crediting Jane's testimony,[7] we are unable to see how the trial court could infer beyond a reasonable doubt that Defendant, while awake, acted with the intent to arouse or gratify his or another person's sexual desire rather than acting involuntarily while asleep. Our review is unfortunately hindered by the brevity of the trial court's findings, which omitted any discussion of how the element of intent had been proven. With respect to the elements of the offense, including intent, the trial court's findings stated only that "Based on the foregoing findings, the elements of the charged offense are proven beyond a reasonable doubt in that defendant was acting in a position of trust, authority and care over a 12 year old and guided her hand to touch his sexual organ. The Court therefore finds him guilty . . . ." In short, it seems probable that the trial court credited the State's opening argument (rather than Victim's account) over Defendant's defense, even though elements of that opening statement were not supported by any testimony adduced during trial.

---

7. The State emphasizes Jane's testimony that Defendant was not snoring and therefore she believed he was not asleep. But the disjointed questions posed to Jane make it unclear whether this testimony described Defendant at the time he moved her hand to his penis, when Jane got up from the bed and left the room, or after she returned from the bathroom. Jane also testified that she had previously reported that Defendant was snoring when he moved her hand and that "he was snoring . . . the whole time. And then he stopped when I got up." While we agree with the trial court that snoring is not to be equated with sleeping, Jane's testimony simply does not demonstrate beyond a reasonable doubt that Defendant was or was not sleeping when he moved her hand to his penis.

¶17  We defer to the trial court's credibility determination and thus accept Jane's testimony as true. Indeed, even Defendant testified that Jane had no reason to make up a story or lie. Nevertheless, and even discounting Defendant's testimony that he did not remember anything happening that evening, there was no additional evidence from which Defendant's intent could be inferred beyond a reasonable doubt. In essence, the State asserts an evidentiary presumption that the physical act of touching amounts to prima facie evidence of an intent to do so for the purpose of arousing or gratifying sexual desire. Such a holding would effectively and impermissibly shift the burden of proof regarding intent onto the defendant so long as the physical act element is proven. *See Francis v. Franklin*, 471 U.S. 307, 313 (1985) ("The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. This bedrock, axiomatic and elementary constitutional principle prohibits the State from using evidentiary presumptions . . . that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." (brackets, citation, and internal quotation marks omitted)); *accord State v. Crowley*, 2014 UT App 33, ¶ 7, 320 P.3d 677 (same).

¶18  The central issue was whether Defendant acted with the intent to arouse or gratify the sexual desire of any person. Jane testified at trial that Defendant placed her hand, palm up, on his penis. Although "the reviewing court will stretch the evidentiary fabric as far as it will go," "this does not mean that the court can take a speculative leap across a remaining gap in order to sustain a verdict." *State v. Pullman*, 2013 UT App 168, ¶ 14, 306 P.3d 827 (citation and internal quotation marks omitted). Though intent may generally be inferred from circumstantial evidence, that ability is not limitless. "When intent is proven by circumstantial evidence, we must determine (1) whether the State presented any evidence that [the defendant] possessed the requisite intent,

and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [the defendant] possessed the requisite intent." *State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346 (citation and internal quotation marks omitted). Here, the State did not present evidence other than the act itself, which act was not a typical sexual activity, to provide a basis from which logic and reasonable human experience would suggest, beyond a reasonable doubt, that Defendant had acted with the requisite intent.[8] Consequently, the trial court's apparent adoption of such an inference is against the clear weight of the evidence, and we cannot sustain the resulting judgment. *See State v. Singh*, 2011 UT

---

8. We recognize that, in most cases, proof of a sexual act will itself provide a basis from which a factfinder may permissibly rely on logic and human experience to infer intent beyond a reasonable doubt. *See, e.g., State v. Maness*, 2010 UT App 370U, para. 4 (affirming a conviction for forcible sexual abuse where, among other things, the defendant touched the victims' genitalia and breasts "during a massage procedure that should be performed without touching the genitalia"). But this is not such a case. On the contrary, the evidence presented at trial did not suggest that this touching had the "logic and human experience" hallmarks of hand-to-penis contact intended for the purposes of sexual gratification. Specifically, it appears from the record that the back of Jane's hand touched Defendant's penis through his clothes. There was no evidence that Defendant removed his pants or that there was skin-to-skin contact. Moreover, there was no evidence that Defendant attempted to manipulate Jane's hand or have Jane manipulate it while it was in contact with Defendant's penis. In addition, the State did not elicit any testimony from Jane that Defendant made sounds or movements suggestive of sexual pleasure. And finally, according to Jane, Defendant's penis remained "soft" throughout the brief time that the back of Jane's hand was in contact with it.

App 396, ¶ 5, 267 P.3d 281; *see also Spanish Fork City v. Bryan*, 1999 UT App 61, ¶ 5, 975 P.2d 501 ("'[A] guilty verdict is not legally valid if it is based solely on inferences that give rise to only . . . speculative possibilities of guilt.'" (quoting *State v. Workman*, 852 P.2d 981, 985 (Utah 1993))).

CONCLUSION

¶19   To convict Defendant, the State needed to prove that he acted with the intent to arouse or gratify the sexual desire of any person. Though such intent can generally be proved by circumstantial evidence, the State presented no evidence other than the act itself to the trial court. This physical act, without more, was not sufficient evidence to prove beyond a reasonable doubt that Defendant intended to arouse or gratify his or another's sexual desire. And while we will not second-guess the trial court's determination that Jane's testimony was credible, we conclude that the State failed to elicit testimony from which the requisite intent could be inferred beyond a reasonable doubt. The trial court's judgment of conviction is therefore against the clear weight of the evidence.

¶20   Conviction reversed.

———————