2018 UT App 60

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ENRIQUE VALENTIN GONZALES-BEJARANO,
Appellant.

Opinion
No. 20160271-CA
Filed April 12, 2018

Fourth District Court, Fillmore Department
The Honorable Jennifer A. Brown
No. 151700176

Nathan K. Phelps, Attorney for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1     Defendant Enrique Valentin Gonzales-Bejarano appeals
from his convictions: two second-degree felonies, four third-
degree felonies, and a class A misdemeanor. Specifically, he
argues that he did not receive his constitutionally guaranteed
right to the effective assistance of counsel because his counsel
had a conflict of interest, failed to object to certain testimony,
and failed to move for a directed verdict with regard to two of
the charges. We conclude that Defendant has not demonstrated
any prejudice resulting from the alleged conflict of interest or
hearsay testimony. But we agree that Defendant received
ineffective assistance of counsel when his counsel failed to move
for a directed verdict on two of the seven charges. We therefore

vacate his convictions for those two charges but affirm in all other respects.

BACKGROUND

¶2     A police officer (Officer), responding to a report of a suspicious vehicle, discovered Defendant and Defendant's fiancée (Fiancée) in the back seat of the vehicle. Officer asked Defendant for his identification, and Defendant handed over a California driver license with the name Victor Payan. Officer also asked Defendant for the vehicle's registration, and Defendant stated that he could not find the registration and that the vehicle belonged to a friend. A check of the vehicle's license plate showed that the vehicle had been reported stolen nine days earlier. Officer then arrested Defendant and Fiancée and began an inventory search of the vehicle. Later, while being booked at the jail, Defendant admitted that he was not Victor Payan.

¶3     After night fell, the vehicle was taken to the sheriff's building's garage to be impounded, and several officers finished the inventory search that had been started earlier. In the course of the search, the police found "a small white bindle container, plastic container, sitting on the passenger seat between where [Defendant and Fiancée] were located." The police also found a binder containing "several birth certificates," utility bills, and immunization records bearing the names of people who were not present. And the police found Defendant's wallet, from which he had taken the California driver license; the wallet also contained a Utah driver license with the name Victor Payan and two debit cards with other names. The police noticed holes in the vehicle's headliner fabric but apparently did not search that area.

¶4     The police returned the vehicle to its owner. Several days later, the vehicle's owner discovered a package containing nearly one pound of methamphetamine inside the headliner and reported the find to the police. The package's street value was estimated at $100,000.

¶5 A few days later, staff at the jail where Defendant was held searched the belongings of another inmate as part of the normal release procedures. In his belongings, staff found a jail request form with Defendant's signature on the front. The back of the form contained a note:

> Her name is Janet, Enrique's sister, tell her I got arrested and to go [to] my room and look for my address book. And download the What's Up app,[1] and call my conecta,[2] his name is Marcos and let him know I and my girlfriend got arrested with a stolen motor vehicle. Cops didn't find the dope and when car was released to the owners, they found out the dope, one and a half pounds of crystal in which they raise my bail to $50,000.

Jail staff then reviewed surveillance tapes and reported finding a segment showing Defendant writing the note and giving it to the inmate being released. However, the staff failed to preserve the tape and instead recorded over it. In lieu of introducing the tape into evidence, the staff who watched the tape testified at trial.

¶6 The State eventually charged Defendant with possession of a stolen motor vehicle, a second-degree felony, Utah Code Ann. § 41-1a-1316 (LexisNexis 2014); possession of a controlled substance with intent to distribute, a second-degree felony, *id.* § 58-37-8 (LexisNexis 2016); two counts of forgery, third-degree felonies, *id.* § 76-6-501(2)(a) (LexisNexis 2012); two counts of unlawful possession of a financial transaction card, third-degree felonies, *id.* § 76-6-506.3(1); and unlawful possession of another's

---

1. This may be a reference to the encrypted messaging platform WhatsApp.

2. The State informs us that "conecta" is a slang term indicating a drug dealer.

identification documents, a class A misdemeanor, *id.* § 76-6-1105(2)(a)(i).

¶7 At trial, the State sought to show that Defendant knew that he was not entitled to possess the identification documents in the binder. To this end, the State elicited testimony from Officer that he had contacted the individuals to whom the documents belonged and that those individuals had denied giving Defendant permission to have the documents. Defense counsel did not object to this testimony on either Confrontation Clause or hearsay grounds.

¶8 The State also sought to show that Defendant had been in possession of the methamphetamine package. The State elicited testimony from the officer (Sergeant) who had retrieved the package from the vehicle's owner. Sergeant testified that he responded to a call about the package the owner found in the vehicle and recounted several things the vehicle's owner told him about how her son had discovered the package. Again, defense counsel did not object on either Confrontation Clause or hearsay grounds.

¶9 Defense counsel also represented Fiancée, who was not tried at the same time as Defendant. Nevertheless, defense counsel argued that Fiancée was responsible for the identification documents in the binder and therefore there was at least a reasonable doubt that Defendant had possessed them.

¶10 With the exception of the second forgery count (count four), which was dismissed at trial, the jury convicted Defendant of all charges, and he timely appealed.

ISSUES AND STANDARD OF REVIEW

¶11 Defendant first contends that his counsel had a conflict of interest as a result of also representing Fiancée and that this conflict prejudiced Defendant. He raises this contention as a matter of ineffective assistance of counsel. Defendant also

contends that he received constitutionally ineffective assistance of counsel when his counsel failed to object to Officer's and Sergeant's testimony on either Confrontation Clause or hearsay grounds. Finally, Defendant contends that defense counsel provided ineffective assistance by failing to move for a directed verdict as to two of the charges.

¶12    "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (quotation simplified).[3]


ANALYSIS

¶13    All of Defendant's contentions allege violations of his constitutional right to the effective assistance of counsel. To succeed on such claims, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because both deficient performance and resulting prejudice are requisite elements for a claim of ineffective assistance of counsel, failure to establish either element necessarily defeats the claim. *Id.* at 697; *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769.

### I. Concurrent Representation of Fiancée

¶14    Defendant first contends that defense counsel labored under a conflict of interest in that he also served as counsel for Fiancée and that Defendant suffered prejudice therefrom. He

---

3. The court's internal style guide has adopted the parenthetical "quotation simplified" in the spirit of the nascent "cleaned up" parenthetical. *See, e.g.*, *State v. Cady*, 2018 UT App 8, ¶ 9 n.2.

asserts that his constitutional right to the effective assistance of counsel was thereby violated.

¶15 The Sixth Amendment to the United States Constitution guarantees a defendant's right to the assistance of counsel that is free from conflicts of interest. *State v. Webb*, 790 P.2d 65, 72 (Utah Ct. App. 1990). But counsel's representation of two or more codefendants does not necessarily violate the Sixth Amendment. Rather, to establish that his or her constitutional right to conflict-free counsel was violated, a defendant must show (1) "that an actual conflict of interest existed" that (2) "adversely affected [his or her] lawyer's performance." *Id.* at 73; *see also State v. Lovell*, 1999 UT 40, ¶ 22, 984 P.2d 382, *cert. denied*, 528 U.S. 1083 (2000). It follows that failure to prove either element is fatal to an appeal predicated on an alleged violation of the Sixth Amendment right to counsel.

¶16 Here, we proceed directly to the second element—whether defense counsel's concurrent representation adversely affected Defendant's case. In other words, we consider whether defense counsel actually elevated Fiancée's defense interests above those of Defendant to his detriment, not merely whether defense counsel had the opportunity to do so.

¶17 Defendant concedes that his defense counsel "tried to show through questioning that [Fiancée] was the one actually in possession of the identification documents" and that defense counsel "hammered that point home for the jury, claiming that it created reasonable doubt on the document charges." But with regard to the other charges against Defendant, he argues that defense counsel "had to limit the forcefulness of his attacks lest [he] build the case against [Fiancée] while he created reasonable doubt for [Defendant]."

¶18 Defendant identifies only one example of the alleged adverse effect of counsel's dual representation: "[W]hile [Fiancée] was made out to be responsible for the identification documents, no effort was made to put blame on her for the

drugs." Defendant thus implies that defense counsel's decision not to argue to the jury that the drugs belonged to Fiancée was a product of defense counsel's split loyalties.

¶19 The evidence, however, does not support this implication. The note recovered by jail staff and presented at trial had Defendant's name written on one side and, on the other side, "I and my girlfriend got arrested with a stolen motor vehicle," "[c]ops didn't find the dope," and "when car was released to the owners, they found out the dope, one and a half pounds of crystal." Additionally, with regard to the bindle of methamphetamine initially found in the stolen vehicle, Officer wrote in his report that Defendant "stated the drugs belonged to him," and Officer presumably would have testified to the same at trial had defense counsel tried to assign responsibility for the drugs to Fiancée. In light of this evidence connecting Defendant to the drugs, defense counsel could have reasonably decided that claiming Fiancée was responsible for both the drugs and the identification documents would have backfired and caused the jury not to credit either assertion. It was apparently counsel's consideration of the evidence, not his concurrent representation of Fiancée, that motivated his decision not to try to blame her for the drugs.

¶20 Defendant does not identify any other concrete examples of the alleged adverse effect that concurrent representation had on his defense at trial. Instead, he speculates (1) that defense counsel "couldn't make any decision on how to investigate without impugning his separate obligations to keep [Fiancée's] confidences, to advance her interests without regard to others, and to avoid conflicts," (2) that "any argument that [defense counsel] might have advanced on [Defendant's] behalf would almost certainly be colored by knowledge he had gained as [Fiancée's] attorney," and (3) that "there are arguments and actions [defense counsel] should have made but didn't." Defendant does not identify any evidence that any of these concerns materialized.

¶21    Speculation is insufficient to demonstrate that an actual conflict of interest adversely affected Defendant at trial. To show that his right to the effective assistance of counsel was violated by a conflict of interest, a defendant "must demonstrate as a threshold matter that the defense attorney was required to make a choice advancing [another's] interests to the detriment of [the defendant's] interests." *State v. Cheek*, 2015 UT App 243, ¶ 35, 361 P.3d 679 (ellipsis, citation, and internal quotation marks omitted). "Hypothetical or speculative conflicts will not suffice to establish a violation." *Id.* (brackets, citation, and internal quotation marks omitted); *see also Lovell*, 1999 UT 40, ¶ 22 (holding that a defendant "must show that [defense counsel] had to make choices that would advance [another's] interests to the detriment of [the defendant's]"); *Webb*, 790 P.2d at 75 ("There is no violation where the conflict is irrelevant or merely hypothetical; there must be an actual, significant conflict."). Because Defendant offers only vague descriptions of ways defense counsel's efforts *might* have been limited by his concurrent representation of Fiancée, Defendant has failed to show any *actual* adverse effect.

¶22    Because Defendant has not demonstrated that defense counsel's concurrent representation of Fiancée actually adversely affected his representation of Defendant, Defendant cannot establish that he received anything less than the effective assistance of counsel guaranteed by the Sixth Amendment. *See Lovell*, 1999 UT 40, ¶ 22; *Webb*, 790 P.2d at 72.

## II. Officer's Testimony and Sergeant's Testimony

¶23    Defendant next contends that he received ineffective assistance of counsel when defense counsel "failed to exclude unconfronted hearsay testimony critical to the State's case." Specifically, he points to Officer's testimony regarding his identification-document investigation and Sergeant's testimony regarding the vehicle owner's subsequent discovery of the pound of methamphetamine. He asserts that counsel could have prevented the introduction of this testimony by raising hearsay

and/or Confrontation Clause challenges. In these circumstances, both challenges would have attempted to exclude evidence of what the victims told the police. Thus, to succeed, Defendant must show that such evidence would have actually been excluded had defense counsel objected on either hearsay or Confrontation Clause grounds. *See Strickland v. Washington*, 466 U.S. 668, 687, 690–91 (1984) (explaining that a successful ineffective assistance of counsel claim requires the appellant to demonstrate both deficient performance and prejudice).

¶24    To convict Defendant of unlawful possession of another's identification documents, the State had to prove beyond a reasonable doubt that Defendant "possess[ed] an identifying document with knowledge that he [was] not entitled to obtain or possess the identifying document." *See* Utah Code Ann. § 76-6-1105(2)(a)(i) (LexisNexis 2012). To this end, the State elicited testimony from Officer relating to whether Defendant had permission to possess the identification documents discovered in the binder:

> Q. Okay. Now, you've testified and we've admitted exhibits here today of different identification documents, things like that, right?
>
> A. That's correct.
>
> Q. Did you at some point attempt to determine who or where the owners of that information were at?
>
> A. I did.
>
> Q. And did you determine through that investigation that the individuals listed on the birth certificates [and other] documents inside the folder were from St. George?
>
> A. That's correct.

Q. Did you make contact with those individuals?

A. I did.

Q. And did either of those individuals give [Defendant] or anyone else permission to have those documents?

A. They did not.

¶25 And with regard to the possession-with-intent-to-distribute charge, Sergeant similarly testified as to what the vehicle owners had told him about how and when they had discovered the package of methamphetamine in the vehicle's headliner. Neither the identification-document owners nor the vehicle owners testified at trial.

¶26 Defendant argues that defense counsel should have objected to Officer's and Sergeant's testimony as hearsay because they recounted the owners' statements which were made out of court and introduced at trial for their truth. *See* Utah R. Evid. 801(c). And he argues that defense counsel should have objected on Confrontation Clause grounds because he was unable to cross-examine or otherwise confront these owners. *See generally Crawford v. Washington*, 541 U.S. 36, 68–69 (2004) ("Where testimonial evidence is at issue, however, the Sixth Amendment['s Confrontation Clause] demands what the common law required: unavailability and a prior opportunity for cross-examination.").

¶27 We recognize that both types of challenges, as asserted here, would have been negated had the owners testified at trial.[4] And the State's response essentially assumes that, had defense

---

4. Defendant does not explain how, or even suggest that, he could have impeached the owners had he been able to confront them.

counsel objected, the owners would have been available and would have testified consistently with Officer's and Sergeant's characterizations of the owners' statements. Because this issue is before us as a matter of ineffective assistance of counsel, the burden rests on Defendant to sufficiently support his implicit claim that the owners would not have testified. *See, e.g., Archuleta v. Galetka*, 2011 UT 73, ¶ 40, 267 P.3d 232 (holding that "a defendant must present *sufficient evidence* to support" his or her ineffective-assistance-of-counsel claim (emphasis added)).

¶28 Defendant has moved for temporary remand pursuant to rule 23B of the Utah Rules of Appellate Procedure to supplement the record. A rule 23B "motion shall be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." Utah R. App. P. 23B(a); *see also State v. Litherland*, 2000 UT 76, ¶ 16, 12 P.3d 92 (holding that a defendant bears the primary obligation and burden of moving for a temporary remand). But the affidavit attached to Defendant's rule 23B motion—memorializing a conversation between Defendant's current counsel and his trial defense counsel—did not directly discuss whether the owners would have been *available* to testify at trial. Rather, the affidavit noted only defense counsel's strong belief that the owners were not *actually present* at trial. There is no affidavit from the owners indicating that they would have been unwilling or unable to travel to and testify at trial. Nor is there any claim that Defendant's efforts to secure such an affidavit were stymied by an inability to contact the owners. Thus, there is no "nonspeculative allegation" that the owners were in fact unable or unwilling to testify at trial. We therefore deny Defendant's rule 23B motion and evaluate his ineffective assistance claim on the basis of the record before us.

¶29 Because Defendant has not shown that the owners of the identification documents or the owners of the vehicle were unavailable at trial, our analysis must proceed under the assumption that, had defense counsel raised appropriate

objections to the testimony of Officer and Sergeant, the State would have called the owners to testify and that they would have testified consistently with the explanations given by Officer and Sergeant.

¶30   Bearing this assumption in mind, the State first argues that failing to object to the testimony of Officer and Sergeant may well have been a reasonable trial strategy. According to the State, "even if the trial court sustained defense counsel's objections, the prosecutor may have called [the owners] with firsthand knowledge of the events." *Cf. Strickland*, 466 U.S. at 690 ("[C]ounsel is strongly presumed to have . . . made all significant decisions in the exercise of reasonable professional judgment."). The State concedes that trial may have been delayed to allow them to arrive, but notes that a continuance would have been entirely appropriate. *See generally State v. Cornejo*, 2006 UT App 215, ¶ 23, 138 P.3d 97 (holding that "denial of the State's request for a continuance to obtain an absent witness was an unreasonable action" under the circumstances of that case (citation and internal quotation marks omitted)). Thus, counsel was faced with a choice between allowing Officer and Sergeant to testify indirectly or delaying trial to allow the owners to testify directly. According to the State, counsel's election to have the testimony come to the jury indirectly, rather than directly, was an objectively reasonable trial strategy. We cannot disagree; the impact of direct testimony from a physically present crime victim may carry more weight with a jury than a law enforcement officer's secondhand statement of the same fact. We conclude that defense counsel's failure to object to the challenged testimony, when the same testimony could well have been elicited from the crime victims, fell within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

¶31   Even if we were to conclude otherwise, we would still reach the same result, given Defendant's failure to demonstrate prejudice. *See id.* at 692. We have determined that Defendant has failed to show that the owners would not have testified at trial *See supra* ¶¶ 28–29. And Defendant has not shown that the

owners' testimony would have contradicted Officer's and Sergeant's characterizations or that he could have impeached their testimony. Thus, there is no indication that the quantity or quality of the evidence presented at trial would have differed had defense counsel raised the hearsay and/or Confrontation Clause objections. And because the evidentiary picture would not have differed, we will not presume prejudice; that is, where the evidence would have been of the same caliber, we cannot conclude that there was a reasonable likelihood of a result more favorable for the defendant. *See Strickland*, 466 U.S. at 695.

¶32 Consequently, we conclude that Defendant has not demonstrated that his counsel's failure to raise hearsay or Confrontation Clause objections to the testimony of Officer and/or Sergeant constituted ineffective assistance of counsel.

## III. Charges Regarding Debit Cards

¶33 Defendant contends that his trial counsel provided ineffective assistance of counsel with respect to the two charges of unlawful possession of a financial transaction card. Specifically, he argues that his counsel should have moved to dismiss those charges on the ground of insufficient evidence or should have objected to an erroneous jury instruction.

¶34 Two lengthy statutes are relevant. The first criminalizes the fraudulent use of a financial transaction card (the Fraudulent Use Statute) while the second criminalizes the unlawful acquisition, receipt, or possession of a financial transaction card (the Unlawful Possession Statute). The Fraudulent Use Statute provides:

> It is unlawful for any person to:
>
> (1) knowingly use a false, fictitious, altered, counterfeit, revoked, expired, stolen, or fraudulently obtained financial transaction card to obtain or attempt to obtain credit, goods, property, or services;

(2) knowingly, with the intent to defraud, use a financial transaction card, credit number, personal identification code, or any other information contained on the card or in the account from which the card is issued, to obtain or attempt to obtain credit, goods, or services;

(3) knowingly, with the intent to defraud, use a financial transaction card to willfully exceed an authorized credit line by $500 or more, or by 50% or more of the line of credit, whichever is greater;

(4)(a) knowingly, with the intent to defraud, make application for a financial transaction card to an issuer and make or cause to be made a false statement or report of the person's name, occupation, financial condition, assets, or personal identifying information; or

(b) willfully and substantially undervalue or understate any indebtedness for the purposes of influencing the issuer to issue the financial transaction card; or

(5) knowingly, with the intent to defraud, present or cause to be presented to the issuer or an authorized credit card merchant, for payment or collection, any credit card sales draft, if:

> (a) the draft is counterfeit or fictitious;
>
> (b) the purported sales evidenced by any credit card sales draft did not take place;
>
> (c) the purported sale was not authorized by the card holder; or
>
> (d) the items or services purported to be sold as evidenced by the credit card sales

> drafts are not delivered or rendered to the card holder or person intended to receive them.

Utah Code Ann. § 76-6-506.2 (LexisNexis 2012). The Fraudulent Use Statute is extensively referenced by the immediately following statute, the Unlawful Possession Statute, which outlines five variants of the crime:

> Any person is guilty of a third degree felony who:
>
> (1) acquires a financial transaction card from another without the consent of the card holder or the issuer;
>
> (2) receives a financial transaction card with intent to use it in violation of [the Fraudulent Use Statute];
>
> (3) sells or transfers a financial transaction card to another person with the knowledge that it will be used in violation of [the Fraudulent Use Statute];
>
> (4)(a) acquires a financial transaction card that the person knows was lost, mislaid, or delivered under a mistake as to the identity or address of the card holder; and
>
> (b)(i) retains possession with intent to use it in violation of [the Fraudulent Use Statute]; or
>
>> (ii) sells or transfers a financial transaction card to another person with the knowledge that it will be used in violation of [the Fraudulent Use Statute]; or
>
> (5) possesses, sells, or transfers any information necessary for the use of a financial transaction card, including the credit number of the card, the

expiration date of the card, or the personal identification code related to the card:

(a)(i) without the consent of the card holder or the issuer; or

> (ii) with the knowledge that the information has been acquired without consent of the card holder or the issuer; and

(b) with intent to use the information in violation of [the Fraudulent Use Statute].

Utah Code Ann. § 76-6-506.3 (LexisNexis 2012).

¶35 The State charged Defendant with violating the Unlawful Possession Statute. The State prepared a jury instruction that appears to track the fifth variant of that statute:

> The elements of Unlawful Possession of a Financial Transaction Card as charged in this case are:
>
> 1. That [Defendant];
>
> 2. In Millard County, State of Utah, on or about November 19, 2015;
>
> 3. Possessed a financial transaction card or account information from a financial transaction card;
>
> 4. Without the consent of the cardholder or issuer;
>
> 5. With intent to use the financial transaction card or account information from the financial transaction card unlawfully.

¶36 Defendant argues that the instruction was faulty because it used the broad term "intent to use the financial card . . . unlawfully" rather than the narrower concept criminalized by the statute, "intent to use the information in

violation of [the Fraudulent Use Statute]." *See* Utah Code Ann. § 76-6-506.3(5)(b). He also argues that the State failed to present any evidence of his intent to use the card fraudulently. We address the latter of Defendant's arguments and, because we find it persuasive, decline to address the former.

¶37   Defendant notes that "[t]he only potential evidence the State had" of his intent "was that the circumstances under which [Defendant] possessed the card were sufficient to raise an inference that [he] had the intent to use the card" in violation of the Fraudulent Use Statute. He asserts that this evidence was insufficient to support his conviction.

¶38   The State responds that it only had to prove either (1) that Defendant acquired the card without the consent of the card holder or the issuer or (2) that he received the card with intent to use it in violation of the Fraudulent Use Statute. The State argues that "[s]atisfying either subsection (1) or (2) is sufficient to prove a defendant's guilt." But the State did not seek to have the jury instructed on either of these variants.

¶39   The State elected to have the jury instructed on the possessing variant of the crime but not the acquiring or receiving variants. On appeal, the State indirectly implies that the verbs have the same meaning or effect. But pursuant to a well-recognized canon of statutory interpretation, "we presume that the legislature used each word advisedly" and "that a difference in word choice is to be assigned a difference in meaning." *Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 64 n.115 (quotation simplified). The legislature used different words to describe the variants and in fact attached different mens rea elements to them. Accordingly, we will not presume that a jury finding of possession without consent is the equivalent of a jury finding of acquisition without consent. Indeed, it is not hard to imagine a situation in which a defendant acquired a card with consent but retained and possessed it after such consent was rescinded. Because the State only asked the jury to find possession without consent, we cannot speculate as to whether the jury might have found

acquisition without consent. Our analysis is bounded by how the jury was actually instructed and the evidence before it.

¶40    We next consider whether there was sufficient evidence of Defendant's intent to violate the Fraudulent Use Statute. The State does not point us to any evidence of such intent. And we are unable to identify any direct evidence from which the jury could reasonably have inferred that Defendant intended to use the debit cards fraudulently.

¶41    In the absence of direct evidence, we turn to circumstantial evidence. "We recognize [that] proof of a defendant's intent is rarely susceptible of direct proof and therefore the prosecution usually must rely on a combination of direct and circumstantial evidence to establish this element." *State v. Whitaker*, 2016 UT App 104, ¶ 10, 374 P.3d 56 (quotation simplified). "However, before we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime as charged from which the factfinder may base its conclusion of guilt beyond a reasonable doubt." *Id.* (quotation simplified). "A guilty verdict is not legally valid if it is based solely on inferences that give rise to only . . . speculative possibilities of guilt." *Id.* (quotation simplified).

¶42    In other contexts, intent can be inferred from the possession of contraband; for example, possession of drugs with the intent to distribute. *See, e.g., State v. Briggs*, 2008 UT 75, ¶ 24, 197 P.3d 628 ("Where one possesses a controlled substance in a quantity too large for personal consumption, the trier of fact can infer that the possessor had an intent to distribute." (quotation simplified)). But in that context, there is no other explanation for possession of such a large quantity except the intent to distribute it. *See id.; see also State v. Fox*, 709 P.2d 316, 320 (Utah 1985).

¶43    With respect to simple drug possession, intent may also be inferred from possession. But the intent element for that crime is intent to possess the contraband, rather than intent to use it in a particular way; the State may secure a conviction by proving

that the defendant "knowingly and intentionally . . . possess[ed]" the drugs, without necessarily having to show that the defendant intended to use the drugs. *See* Utah Code Ann. § 58-37-8(2)(a)(i) (LexisNexis 2016). In contrast, to secure a conviction for unlawful possession of a financial transaction card under the possession-with-intent variant, the requisite mens rea is "intent to use the information in violation of [the Fraudulent Use Statute]." *See id.* § 76-6-506.3(5)(b) (2012).

¶44 The question before us is therefore whether mere possession of a stolen financial transaction card is sufficient evidence to infer the possessor's intent to violate the Fraudulent Use Statute. We conclude that it is not, because a defendant may plausibly have a debit card, knowing it is stolen, but lack the intent to fraudulently use it as a debit card. For example, a defendant may have taken a wallet to steal the currency therein but lack the intent to use the debit and credit cards owing to the additional risk of apprehension. Or the defendant may possess stolen cards with the intent to sell or barter them. While such acts are criminal, they are not barred by the Fraudulent Use Statute.[5] And the possession variant outlined in section 76-6-506.3(5), with which Defendant was charged, requires the State to show not just any criminal intent, but the specific criminal intent to violate the Fraudulent Use Statute. Mere possession of another's financial transaction cards without more does not give rise to a permissible inference that, beyond a reasonable doubt, the possessor intends to use the cards to commit fraud.

¶45 A conviction for unlawful possession of a financial transaction card requires proof of the defendant's intent to violate the Fraudulent Use Statute. Here, the State did not present evidence of Defendant's intent other than the fact that

---

5. It is also possible to imagine non-criminal possession. A defendant may have encountered financial transaction cards in the course of unrelated activities and possessed them with the intent to turn them in.

Defendant had the cards in his possession. Because the State failed to present nonspeculative evidence of an essential element of the crime charged, defense counsel's failure to move for a directed verdict on the relevant charges amounted to prejudicial deficient performance. In other words, Defendant received ineffective assistance of counsel when defense counsel failed to move for a directed verdict regarding charges whose elements the State failed to present evidence of. We therefore vacate Defendant's convictions for unlawful possession of a financial transaction card.

## CONCLUSION

¶46 Defendant has not demonstrated that defense counsel's representation of Fiancée resulted in a violation of his Sixth Amendment right to the effective assistance of counsel. Nor has Defendant shown that defense counsel's failure to raise hearsay or Confrontation Clause objections resulted in the admission of evidence that otherwise would have been excluded. Defendant has, however, demonstrated that he received ineffective assistance of counsel when defense counsel failed to move for a directed verdict on the two charges of unlawful possession of a financial transaction card, because the State had not presented sufficient evidence of an essential element.

¶47 We vacate Defendant's two convictions for unlawful possession of a financial transaction card but affirm his other five convictions.

———————