2015 UT App 78

# THE UTAH COURT OF APPEALS

SALT LAKE CITY,
Plaintiff and Appellee,
*v.*
ANTHONY MARK GALLEGOS,
Defendant and Appellant.

Memorandum Decision
No. 20140034-CA
Filed April 2, 2015

Third District Court, Salt Lake Department
The Honorable Randall N. Skanchy
No. 131903683

Elise C. Reinert, Attorney for Appellant

Padma Veeru-Collings, Richard Pehrson, and
Brandon Simmons, Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in which JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

ROTH, Judge:

¶1 Anthony Mark Gallegos was convicted of failing to stop at the command of law enforcement, a class A misdemeanor. *See* Utah Code Ann. § 76-8-305.5 (LexisNexis 2012). He appeals, arguing the trial court erred in denying his motion for a directed verdict. We reverse and vacate Gallegos's conviction.

¶2 An officer from the Salt Lake City police force (the Officer) was dispatched in response to a disturbance.[1] A caller had reported that several men, two of whom were wearing red clothing,[2] were wrestling in an alleyway in a location the Officer later testified was a "high-crime area." As the uniformed Officer arrived at the address in his marked police car, he saw a vehicle driving away. As he followed, the vehicle circled the block and stopped across from a home at the address to which he was responding. The home was next to an alleyway. Two men, one of whom was wearing a red shirt, exited the vehicle. The Officer aimed his patrol car's spotlight at the men and shouted, "Gentlemen, stop." The men failed to comply and went inside the home.

¶3 The Officer then saw Gallegos and one other man in the adjacent alleyway. Gallegos was wearing a shirt with red stripes. After making eye contact with the men, the Officer "started to point," but before he said or did anything else, the two men turned and ran away. The Officer followed but had to navigate around a fence before entering the alleyway. Once in direct pursuit, he yelled, "Police, stop," partway down the alley. Gallegos continued to run for roughly half a block, and when another marked police car with its lights flashing came up from the other end of the alleyway, he turned into an adjacent parking

---

1. On appeal, we recite the facts in the light most favorable to the trial court's denial of the directed verdict. *See State v. Brown*, 948 P.2d 337, 339 (Utah 1997) (reciting the facts in the light most favorable to the jury's verdict); *see also State v. Hamilton*, 2003 UT 22, ¶ 41, 70 P.3d 111 (explaining that the same standards applied to a review of jury verdicts should be applied to the review of directed verdicts).

2. On cross-examination, the Officer testified more specifically that the caller had reported two of the men were wearing red jackets.

area and hid behind a shed. The Officer began searching the parking area with his pistol drawn, and after a few seconds, Gallegos came out from behind the shed and surrendered. The Officer testified that Gallegos said something to the effect of, "Sorry, I didn't realize you were a cop." Gallegos complied with the Officer's instructions and submitted to a search. The Officer found no drugs, drug paraphernalia, or weapons on Gallegos's person or in the surrounding area. The Officer smelled alcohol on Gallegos's breath and observed fresh blood and scrapes on his hands and elbows. Gallegos was charged with failure to stop at the command of law enforcement. The Officer did not cite Gallegos for any crime related to the disturbance that the Officer had originally been dispatched for, nor did he cite Gallegos for public intoxication.

¶4    At trial, the City called the Officer as its only witness. After the close of the City's evidence, Gallegos made a motion for a directed verdict. The trial court denied the motion, stating, "The mere fact of taking off from a police officer is sufficient implication associated with an inference that a jury could draw about his desire to be either compliant or intentional[ly] fleeing from an officer." The jury convicted Gallegos as charged.

¶5    We will uphold the denial of a motion for a directed verdict "if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Montoya*, 2004 UT 5, ¶ 29, 84 P.3d 1183 (citation and internal quotation marks omitted). Gallegos argues the City failed to present evidence sufficient to support his conviction beyond a reasonable doubt. We agree.

¶6    "A person is guilty of a class A misdemeanor who flees from or otherwise attempts to elude a law enforcement officer: (1) after the officer has issued a verbal or visual command to stop; (2) for the purpose of avoiding arrest." Utah Code Ann. § 76-8-305.5 (LexisNexis 2012). The trial court's conclusion that

"[t]he mere fact of taking off from a police officer" was sufficient to meet the requirements of the statute suggests that the court believed the City was required to prove only that Gallegos fled after the Officer's command to stop. But the statute also requires that the defendant have fled with a particular intent—"for the purpose of avoiding arrest." *Id.* § 76-8-305.5(2). We conclude the evidence failed to meet this standard.

¶7     In order to prove that Gallegos fled from the Officer to avoid arrest, the statute implicitly requires the City to present evidence supporting an inference that Gallegos thought he was at risk for arrest and was therefore motivated to flee. *See id*. While the statute does not require proof that another crime actually occurred, the element requiring the City to show that Gallegos fled "for the purpose of avoiding arrest" requires evidence in addition to the flight itself. *See id.* This is so because "[l]ike 'mere presence' at the scene of a crime, [f]light by itself is not sufficient to establish . . . guilt . . . but is merely a circumstance to be considered with other factors as tending to show a consciousness of guilt and therefore guilt itself." *State v. Cristobal*, 2010 UT App 228, ¶ 14, 238 P.3d 1096 (second alteration and omissions in original) (citation and internal quotation marks omitted). Thus, while flight "may be considered as evidence of implication in [a] crime, it is only a circumstance [, and i]t alone will not justify conviction of the defendant, in the absence of other evidence tending to connect him with the commission of the crime." *Id.* (second alteration in original) (citation and internal quotation marks omitted).

¶8     Although this principle has generally been applied in cases where flight is a circumstance used to infer a defendant's consciousness of guilt of another substantive crime not involving flight as an element, the principle seems to apply equally well to the charge here, where the act of fleeing must be motivated by a specific purpose. *Cf. State v. James*, 819 P.2d 781, 789 (Utah 1991) ("Flight or concealment shows the guilty conscience of the accused as a result of the crime committed. It does not show the state of mind prior to the criminal act or event."). Were this not

the case, once an officer has issued a command to stop, flight alone would nearly always be sufficient to convict, and the specific intent element would be rendered largely superfluous. *See State v. Martinez*, 2002 UT 80, ¶ 8, 52 P.3d 1276 (stating that when courts examine statutory language, they should "avoid interpretations that will render portions of a statute superfluous or inoperative" (citation and internal quotation marks omitted)). Thus, there must be evidence separate from flight itself from which a jury could conclude beyond a reasonable doubt that a defendant's motivation in fleeing from an officer was to avoid arrest. *See* Utah Code Ann. § 76-8-305.5(2).

¶9 Here there was no direct evidence of Gallegos's intent presented at trial, but "[i]t is well established that intent can be proven by circumstantial evidence." *State v. Holgate*, 2000 UT 74, ¶ 21, 10 P.3d 346 (citation and internal quotation marks omitted). The City argues that it presented sufficient indirect evidence beyond flight alone to support a reasonable inference that Gallegos fled with the purpose to avoid arrest for either a crime related to the fight in the alleyway or public intoxication.

> When intent is proven by circumstantial evidence, we must determine (1) whether the [City] presented any evidence that [Gallegos] possessed the requisite intent, and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience sufficient to prove that [Gallegos] possessed the requisite intent.

*See id.* (citation and internal quotation marks omitted).

¶10 The City argues that there was sufficient evidence to support a reasonable inference that Gallegos fled from the Officer with the intent to avoid arrest for involvement in the reported fight in the alleyway. First, the City contends that Gallegos's presence in the alley with three others, the red upper clothing of two of them (including Gallegos's red-striped shirt),

and the scrapes on his hands and arms support a reasonable inference Gallegos was involved in the disturbance described in the call to dispatch. We agree. But a further step is required to reach a conclusion that his involvement in the fight suggested some sort of criminality from which it could be reasonably inferred that Gallegos had fled "for the purpose of avoiding arrest." *See* Utah Code Ann. § 76-8-305.5(2). His clothing, scrapes, and location imply that he was injured in an altercation, but the nature of his participation is obscured, allowing no more than speculation that Gallegos had been involved in a crime in a role that would motivate him to flee to avoid arrest. Here, no one was fighting when the Officer arrived, and other than Gallegos's flight, there was no evidence suggesting the possibility Gallegos was a willing participant in a criminal altercation was more likely than the possibility he was an unwilling or innocent victim of an assault. "When the evidence supports more than one possible conclusion, none more likely than the other, the choice of one possibility over another can be no more than speculation." *Cristobal*, 2010 UT App 228, ¶ 16. In short, there is simply not enough information about the events that transpired before Gallegos's encounter with the Officer to support an inference that he was seeking to avoid arrest when he fled the officers. Rather, that conclusion requires not just one level of inference but two: first, that he was involved in the fight, and second, that his role suggested (at least to him) criminality. *See id.* ¶ 17 ("While inferences drawn from facts in evidence are appropriate, inferences drawn from inferences are not." (citation and internal quotation marks omitted)). There was thus nothing in the evidence from which a reasonable jury could have concluded beyond a reasonable doubt that Gallegos was fleeing from the Officer "for the purpose of avoiding arrest" due to the possible nature of his participation in a possible criminal altercation. *See* Utah Code Ann. § 76-8-305.5(2).

¶11    The City also argues that it provided sufficient evidence to support a reasonable inference that Gallegos was fleeing to avoid arrest for public intoxication. The Officer reported that Gallegos's breath had a strong odor of alcohol. The City claims a

jury could reasonably infer that the injuries on Gallegos's arms and hands were a result of intoxication because "[b]oth aggressive behavior and lack of coordination are side effects of alcohol use." It argues that in combination with Gallegos's slow reaction in surrendering to the Officer's commands, his scrapes and odorous breath support a reasonable inference that Gallegos was fleeing from the police to avoid arrest for public intoxication. But an intoxication charge requires that a person be either a danger to himself or others in a public place or "unreasonably disturb[]" another in a private place. Utah Code Ann. § 76-9-701(1) (LexisNexis Supp. 2014).[3] Gallegos was not combative with the Officer, and he was not observed being disruptive, being violent, or endangering anyone else. And given the vague report of "wrestling" in the alley and the uncertain origin of his scrapes, no other evidence was presented making it more likely than not that Gallegos's intoxication had become a nuisance or danger to himself or others. *See Cristobal*, 2010 UT App 228, ¶ 16. Thus, the leap from Gallegos's slow reaction time and the smell of alcohol to a conclusion that Gallegos fled for the purpose of avoiding arrest requires speculation. *See id*.

¶12   We conclude that the City presented insufficient evidence from which the jury could conclude beyond a reasonable doubt that Gallegos fled from the Officer "for the purpose of avoiding arrest." *See* Utah Code Ann. § 76-8-305.5(2) (LexisNexis 2012). We therefore reverse the trial court's denial of Gallegos's motion for a directed verdict, and Gallegos's conviction is accordingly vacated.

—————————

3. Any amendments made to this statute since the time of Gallegos's arrest in April 2013 do not affect our analysis, and we therefore cite the current version of the Utah Code for the reader's convenience.