**2024 UT App 75**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSHUA CLAYTON NELSON,
Appellant.

Opinion
No. 20230259-CA
Filed May 16, 2024

Fourth District Court, Heber Department
The Honorable Jennifer A. Mabey
No. 211500195

Benjamin Miller and Debra M. Nelson,
Attorneys for Appellant

Scott H. Sweat and S. Case Wade,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER
and DAVID N. MORTENSEN concurred.

OLIVER, Judge:

¶1      On July 24, 2021, Joshua Clayton Nelson and two of his friends kayaked down the Provo River. None of them were wearing life jackets, in violation of state law. After a series of exchanges with a state park ranger (Ranger) about the missing life jackets, Nelson and his friends stopped on the bank of the river. They were arrested, taken to jail, and charged with failure to stop at the command of a law enforcement officer, a class A misdemeanor. A jury convicted Nelson of the charge, and he now appeals, asserting that his counsel was ineffective for failing to file a motion for a directed verdict where the evidence presented at trial was insufficient to establish that he fled or attempted to elude

a law enforcement officer after receiving a command to stop with the purpose of avoiding arrest. We agree, reverse his conviction, and remand the matter for a new trial.

BACKGROUND[1]

¶2 On July 24, 2021, Ranger was in uniform, patrolling the Provo River to ensure all people on it were properly wearing life jackets. Because it was a state holiday, there were many recreational users on the river. Nelson and his two friends (collectively, the kayakers) were kayaking down the river without life jackets when Ranger first noticed them and ordered them "to step out of the river so that [he] could speak with them." According to Ranger's trial testimony, "All three of them looked at me. We made eye contact." Ranger saw Nelson start to "put his water shoes or flip-flops or something on," as if he were going to get out of the water. Yet Nelson and his friends did not get out. Ranger testified that when he "felt like they were ignoring [him] and were failing to comply," he pulled out his phone "to start recording." The video showed Ranger saying, "Paddle over and get out. Okay. We'll play that game."[2] The kayakers kept floating down the river, and Ranger got into his truck to follow them.

¶3 By the time Ranger reached the kayakers, they had joined a group of people floating on tubes. Ranger again recorded this interaction with his phone. He stated, "Hey, you three right here. Look at the camera. Get out of the water right now. Your last chance before you go to jail." One of the voices on the video said,

_____

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (cleaned up).

2. None of the videos that were played for the jury at trial were included in the record on appeal. Our review of them is limited to their transcription in the record.

"You're talking to me?" At trial, Ranger admitted that during this interaction, he did not explain why he wanted the kayakers to get out of the river and claimed he did so during the earlier, unrecorded interaction.

¶4 According to his testimony, Nelson did not realize Ranger was a law enforcement officer until their second encounter. Nelson explained that he and his friends were initially reluctant to even acknowledge Ranger because "[h]e just wasn't calm" and it "seemed like an interaction [Nelson] wanted to avoid." After one of the people floating on tubes turned to Nelson and said, "I think this guy is serious," Nelson paddled up to his friends and suggested they all get out. They looked for a place to stop and then pulled their kayaks out.

¶5 Ranger, meanwhile, had gotten back in his truck, figuring that the kayakers would use the "public exit point" in a nearby park. Sitting in his truck with binoculars, Ranger spotted the kayakers sitting behind bushes on the far side of the river. He called for backup to keep an eye on the kayakers while he drove to a crossing point and hiked "about a mile up the train tracks" to where they were.

¶6 When he reached the kayakers, Ranger asked why they had not listened to him and gotten out of the river earlier. According to Ranger, the kayakers responded that they did not see him and did not know that they had to get out of the water. Ranger also testified the kayakers made comments "about why, you know, it's just a life jacket" and whether they could "just get [their] ticket" and "things like that." When Ranger asked if they were hiding from him in the bushes, the kayakers denied doing so, explaining that they had just "stopped to drink beer and to pick up garbage." Nelson testified they exited "on the opposite side of the river" because "it was just easier" and "safer" for them to get out on that "more gradual" section of shore.

¶7 Ranger arrested the kayakers and took them to jail. They were charged with failure to stop at the command of a law enforcement officer, a class A misdemeanor. At Nelson's two-day jury trial, the State called two witnesses, Ranger, and his coworker who had assisted as backup. Ranger testified to the events as recounted above and the State played the video recordings from Ranger's phone for the jury. Nelson also testified as described above and asserted "it was crazy that [he and his friends] could be doing nothing wrong, wearing no life jacket, and end up in jail that night."

¶8 After the close of evidence, the trial court instructed the jury that to find Nelson guilty, it must unanimously decide that the State has proved beyond a reasonable doubt that Nelson "did recklessly, knowingly, or intentionally . . . flee from or otherwise attempt to elude a police officer . . . after the officer issued a verbal or visual command to stop . . . for the purpose of avoiding arrest."

¶9 In closing, the State argued that Ranger was identifiable as an officer, gave Nelson repeated commands to stop and get out of the river, and that Nelson did not stop. The State also maintained "the reason [Nelson] didn't want to stop is because he didn't want to get a citation for not wearing a life jacket." Finally, the State argued Nelson did not go to jail because of not wearing a life jacket, but "because he didn't want to face consequences" and "he eluded a peace officer for roughly a mile down the river, [and] made [Ranger] come after him multiple times."

¶10 During closing argument, Nelson's attorney (Trial Counsel) stated that Nelson "had no intention to elude an officer." Trial Counsel pointed out that it took some time for Nelson to even realize that Ranger was a law enforcement officer and that Ranger was addressing him and his friends. Once Nelson had "an opportunity to process the experience," he and his friends "decided to comply," got out of the river, and waited for Ranger. Although Nelson did not stop immediately, Trial Counsel

emphasized the fact Nelson "did end up stopping" and waited for Ranger, at no point acting with the needed intent to elude the officer.

## ISSUE AND STANDARD OF REVIEW

¶11    Nelson asserts there was insufficient evidence to support the jury's verdict. Nelson admits he did not preserve this issue for appeal by raising it below. "[W]hen a party realizes an important issue was not preserved in the trial court, but wishes an appellate court to address that issue, the party must argue that an exception to preservation applies." *State v. Johnson*, 2017 UT 76, ¶ 27, 416 P.3d 443. Nelson invokes the ineffective assistance of counsel exception to preservation.[3] *Id.* ¶ 19. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Popp*, 2019 UT App 173, ¶ 19, 453 P.3d 657 (cleaned up).

## ANALYSIS

¶12    Nelson contends the State did not present evidence that proved beyond a reasonable doubt that he fled or attempted to elude a law enforcement officer after receiving a command to stop with the purpose of avoiding arrest. Nelson points to the fact that he did stop and wait for the Ranger as evidence he did not flee or attempt to elude an officer. And he also argues that, even if his failure to stop immediately could be viewed as an intent to flee or elude, the evidence failed to show he was acting to evade arrest.

---

3. Nelson also invokes the plain error exception to preservation. But because we agree with Nelson that Trial Counsel rendered ineffective assistance, we need not address whether there was also plain error.

Nelson acknowledges this argument was not preserved but contends that review is appropriate under the ineffective assistance of counsel exception to the preservation requirement.

¶13   Nelson contends that Trial Counsel was ineffective in failing to move for a directed verdict at the close of the State's case because the State put forth insufficient evidence that he "acted with the required purpose to flee or to avoid arrest." An ineffective assistance of counsel claim stems from "the Sixth Amendment right to counsel" that exists "to protect the fundamental right to a fair trial," and we review it under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 684. To meet the standard, a criminal defendant must first "show that counsel's performance was deficient," and second "show that the deficient performance prejudiced the defense." *Id.* at 687. "Unless a defendant makes both showings," the claim fails. *Id*. To demonstrate deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In our analysis, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bonds*, 2023 UT 1, ¶ 53, 524 P.3d 581 (cleaned up).

¶14   Nelson was charged with failure to stop at the command of a law enforcement officer. *See* Utah Code § 76-8-305.5(2) (2021). The elements of that offense required the State to prove Nelson (1) fled from or otherwise attempted to elude a peace officer (2) after the officer "issued a verbal or visual command to stop," (3) "for the purpose of avoiding arrest." *Id*. All three elements must be met to support a conviction. We agree with Nelson that the State failed to show that he acted with the intent to avoid arrest.

¶15 In Utah, there are "essential mens rea elements of the failure-to-respond charge." *State v. Bird*, 2015 UT 7, ¶ 24, 345 P.3d 1141. Specifically, the first and third elements of the charge include a "required mental state" that the State must prove. *See id.* ¶ 13. In *Salt Lake City v. Gallegos*, 2015 UT App 78, 347 P.3d 842, we explained that this charge requires "evidence supporting an inference that [the defendant] thought he was at risk for arrest and was therefore motivated to flee." *Id.* ¶ 7. "While the statute does not require proof that another crime actually occurred, the element requiring the [State] to show that [the defendant] fled for the purpose of avoiding arrest requires evidence in addition to the flight itself." *Id.* (cleaned up); *see also State v. Young*, 2015 UT App 286, ¶ 12, 364 P.3d 55 (stating that *Gallegos* stands "for the proposition that Utah Code section 76-8-305.5(2) requires the State to present evidence, beyond a defendant's flight itself, sufficient to support an inference that the defendant thought he was at risk for arrest and was therefore motivated to flee" (cleaned up)).

¶16 The defendant in *Gallegos* was arrested after police responded to a call about a disturbance involving men wearing red clothing in an alley of a high-crime area. 2015 UT App 78, ¶ 3. When police saw the defendant in an adjacent alleyway wearing a shirt with red stripes and yelled for him to stop, the defendant "turned and ran away." *Id.* ¶¶ 2–3. The defendant was convicted of failure to stop at the command of law enforcement, but this court reversed and vacated that conviction for "insufficient evidence from which the jury could conclude beyond a reasonable doubt that [the defendant] fled from the officer for the purpose of avoiding arrest." *Id.* ¶ 12 (cleaned up). Although there was evidence of the defendant's flight from the police, there was no evidence his "motivation in fleeing from an officer was to avoid arrest." *Id.* ¶ 8.

¶17 So too here. The trial court properly instructed the jury that to find Nelson guilty, it must unanimously decide that the State had proved beyond a reasonable doubt that Nelson "did

recklessly, knowingly, or intentionally . . . flee from or otherwise attempt to elude a police officer . . . after the officer issued a verbal or visual command to stop . . . for the purpose of avoiding arrest." Thus, the jury was instructed that both mens rea elements—of fleeing and of avoiding arrest—must be met. But there was no evidence presented that Nelson acted with the intent to avoid arrest. Instead, the evidence showed Nelson acted only to avoid a citation. Ranger testified the kayakers made comments "about why, you know, it's just a life jacket" and whether they could "just get [their] ticket." And when Ranger testified that he did mention jail to the kayakers during their second interaction, it was in the context of a choice between getting out of the water or going to jail. The kayakers did exit the river after realizing Ranger was an officer, but they did not think—correctly—that not wearing a life jacket could result in going to jail.[4] Finally, the State argued in its closing that "the reason [Nelson] didn't want to stop is because he didn't want to get a *citation* for not wearing a life jacket." (Emphasis added.)

¶18   Because of the lack of evidence the State presented at trial on the element of intent to evade arrest, the "State failed to present [any] evidence of an essential element of the crime charged." *State v. Gonzales-Bejarano*, 2018 UT App 60, ¶ 45, 427 P.3d 251. We therefore conclude that Trial Counsel's "failure to move for a directed verdict" fell below the range of reasonable professional assistance, amounting to deficient performance. *Id*.

¶19   We next consider whether Trial Counsel's failure to move for a directed verdict was prejudicial. "Prejudice exists when there is a reasonable probability that the case would have had a

---

4. Failure to wear a life jacket is an "infraction," *see* Utah Code § 73-18-8(8), punishable only by a fine. *See* Utah Admin. Code R650-215-6(5) (listing the personal flotation device requirements on a river), https://adminrules.utah.gov/public/rule/R650-215-5/Current%20Rules [https://perma.cc/JR8A-RFSJ].

different outcome had trial counsel not performed deficiently." *State v. Carrera*, 2022 UT App 100, ¶ 81, 517 P.3d 440 (cleaned up), *cert. denied*, 525 P.3d 1264 (Utah 2023). "Because the State failed to present [any] evidence of an essential element of the crime charged, defense counsel's failure to move for a directed verdict on the relevant charges amounted to prejudicial deficient performance." *Gonzales-Bejarano*, 2018 UT App 60, ¶ 45. Thus, Nelson "has met the burden of showing that the decision reached would reasonably likely have been different absent the error[]" by Trial Counsel. *Carrera*, 2022 UT App 100, ¶ 81 (cleaned up).

¶20 Because Trial Counsel performed deficiently in not filing a motion for a directed verdict and Nelson was prejudiced as a result, we conclude that Nelson received ineffective assistance of counsel. Accordingly, he is entitled to reversal of his conviction and a new trial.

## CONCLUSION

¶21 Where the State failed to present evidence of an essential element of the crime, Trial Counsel's decision to not file a motion for a directed verdict amounted to ineffective assistance of counsel. We therefore reverse Nelson's conviction and remand the matter for a new trial.