2025 UT App 61

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
EDDIE MICHAEL CLEGG,
Appellant.

Opinion
No. 20230012-CA
Filed May 1, 2025

Second District Court, Ogden Department
The Honorable Joseph M. Bean
No. 211903061

Emily Adams, Freyja Johnson, and Hannah K.
Leavitt-Howell, Attorneys for Appellant

Christopher F. Allred and Steven A. Lee,
Attorneys for Appellee

JUDGE RYAN D. TENNEY authored this Opinion, in which
JUDGES JOHN D. LUTHY and AMY J. OLIVER concurred.

TENNEY, Judge:

¶1     Eddie Clegg was walking on the shoulder of a one-way road when an officer approached him and ordered him to stop. Clegg shouted at the officer and continued walking. The officer quickly arrested Clegg, and Clegg was later charged with, among other things, failing to stop at the command of an officer. The case went to trial, and a jury convicted Clegg on that charge.

¶2     After trial, Clegg filed a motion to arrest judgment, arguing that there was insufficient evidence to prove the intent element for the offense of failing to stop at the command of an officer. The

district court denied the motion, and Clegg now appeals that decision. For the reasons set forth below, we agree with Clegg that the motion to arrest judgment should have been granted. We therefore vacate that conviction.

BACKGROUND[1]

¶3     On December 1, 2021, Clegg's motorhome and truck were impounded by law enforcement. Clegg later said that he felt like he had "lost everything."[2]

¶4     Later that day, Clegg decided to go to a friend's house and ended up walking on the shoulder of 20th Street in Ogden. The portion of 20th Street where Clegg was walking is a one-way, two-lane road running westbound that bridges over a viaduct and railroad tracks; after the bridge section, the road rejoins with two additional lanes that run eastbound. Clegg was walking with traffic on the westbound, bridge portion of the road. The picture below was introduced as an exhibit by the State at trial, and it shows the portion of the road in question:

---

1. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Suhail*, 2023 UT App 15, n.1, 525 P.3d 550 (quotation simplified).

2. At sentencing, Clegg's attorney asserted (without any pushback from the State) that Clegg had been "living out of his vehicle" when his motorhome and truck were impounded.



¶5     While Clegg was walking, police dispatch received reports that someone was "acting erratic" and walking on "the side" or perhaps "the middle of the road," so two officers were sent to the scene. One of the officers later testified that he and his partner were sent because of a potential "safety hazard."

¶6     When the officers arrived, Clegg was walking on the left shoulder of the westbound road, between the guardrail and the left yellow edge line. The officers activated their patrol lights and stopped their vehicle a short distance behind Clegg. Both of the officers got out of the vehicle, and one of them (Officer) repeatedly yelled to Clegg, "Come here. Stop walking." But Clegg continued to walk away. While doing so, Clegg repeatedly yelled, "[t]hey took my home," and he also repeatedly asked the officers if they were going to "beat [him] up." Officer then ran toward Clegg, grabbed Clegg's arm, and placed him in handcuffs. The encounter was recorded on Officer's body camera, and that recording was later played at trial. As shown in that recording, the entire verbal discussion described above took place within 30 seconds of officers arriving and getting out of their vehicle, and Clegg was in handcuffs less than 30 seconds after that.

¶7     After being handcuffed, Clegg was put in the back seat of the police vehicle. Officer got into the vehicle and told Clegg that he was about to read Clegg his *Miranda* rights. Clegg responded,

"For what?" Officer told Clegg that he was being arrested, which prompted Clegg to again ask, "For what?" Officer read Clegg his *Miranda* rights, and after Clegg confirmed that he wished to speak with Officer, Officer asked Clegg why he was "in the middle of the road." Clegg responded that he "wasn't in the middle of the street." Officer then asked Clegg, "Why didn't you stop when I told you to stop?" Clegg responded, "Because you just impounded my vehicle, the cops did. Illegally." When Officer asked the same question again, Clegg said, "I did stop. . . . I didn't hear what you said." Clegg followed up, "I did stop. I turned around and faced you. I kept walking from you . . . [because] I just lost everything I fucking own. Everything. They took my truck. I've got nothing. Nothing."[3]

¶8    The State later charged Clegg with (1) failure to stop at the command of an officer, a class A misdemeanor; (2) interference with an arresting officer, a class B misdemeanor; and (3) being a pedestrian improperly on a roadway, an infraction. The case went to trial, where the State presented its case through testimony from both officers as well as the body camera footage from Officer. Clegg called no witnesses in his defense.

¶9    In the State's closing, the prosecutor argued that for purposes of the failure to stop charge, the jury could infer that because Clegg walked away from the officers after being ordered to stop, he fled for the purpose of avoiding arrest. Specifically, the prosecutor said,

> Now, again, I can't prove directly that he did it for
> the purpose of avoiding arrest, but let's look at the
> surrounding facts. As I stated, [Officer] turned on
> his patrol lights, giving a verbal order to stop. And

---

3. This encounter was also recorded on Officer's body camera, and that recording was played at trial.

> the defendant knew that they were police officers because he started yelling at them the second they exited their vehicle.
>
> You see in the video, he starts yelling about how, you know, they took his home. Later, he says in the video that the police took his motorhome earlier that day. So the fact that he's yelling that at the officers indicates that he knows that they're officers. They were in their full uniform—they were in their uniforms on that day. The police car with the lights on was within view of the defendant. [Officer] gave him multiple commands to stop walking and to come here. And the defendant did not comply with those commands. Therefore, the elements for failure to stop at the command of a law enforcement officer have been met.

In the defense's closing, Clegg's counsel argued that the State had not proved the failure to stop charge because it "provided no evidence" that Clegg fled for the purpose of avoiding arrest.

¶10 The jury found Clegg guilty of failing to stop at the command of an officer as well as of being a pedestrian improperly on a roadway, but the jury acquitted Clegg of interfering with an arresting officer.

¶11 Before sentencing, Clegg filed a motion to arrest judgment on the failure to stop charge. There, Clegg argued that the State had failed to prove that he acted with the specific intent of avoiding arrest. The district court denied Clegg's motion, concluding that "the jury was well within the bounds of reason[] to infer Defendant's mental state and that he purposefully turned

away from the officers, ignoring their commands to stop for the purpose of avoiding arrest." Clegg now appeals that decision.[4]

ISSUE AND STANDARD OF REVIEW

¶12 We review a district court's denial of a motion to arrest judgment for correctness. *See State v. Stricklan*, 2020 UT 65, ¶ 30, 477 P.3d 1251. When such a motion is based on an alleged insufficiency of the evidence, the defendant must show that "when viewed in the light most favorable to the State, *no evidence existed* from which a reasonable jury could find beyond a reasonable doubt that the defendant committed the crime." *Id.* (emphasis in original, quotation otherwise simplified); *see also State v. Raheem*, 2024 UT App 29, ¶ 20, 546 P.3d 331 ("We will uphold a denial of the motion to arrest judgment based on an insufficiency of the evidence claim, if some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." (quotation simplified)), *cert. denied*, 550 P.3d 997 (Utah 2024).

ANALYSIS

¶13 Clegg argues that the district court erred in denying his motion to arrest judgment, asserting that the State failed to prove that he acted with the "purpose of avoiding arrest." We agree.[5]

---

4. Clegg does not appeal his conviction for being a pedestrian improperly on a roadway.

5. Clegg also separately argues that his counsel provided ineffective assistance by failing to ensure that the jury was properly instructed on the mens rea requirement for this offense.

(continued…)

¶14    Upon a defendant's motion, a district court must "arrest judgment if the facts proved or admitted do not constitute a public offense." Utah R. Crim. P. 23. When a motion to arrest judgment is based on an alleged insufficiency of the evidence, the question is "whether the jury's verdict is reasonable in light of all of the evidence taken cumulatively, under a standard of review that yields deference to all reasonable inferences supporting the jury's verdict." *State v. Stricklan*, 2020 UT 65, ¶ 114, 477 P.3d 1251 (quotation simplified). But there's a difference between a reasonable inference and speculation. *See Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067. "An inference is a conclusion reached by considering other facts and deducing a logical consequence from them," whereas "speculation is the act or practice of theorizing about matters over which there is no certain knowledge at hand." *Id.* ¶ 12 (quotation simplified). Thus, "the difference between an inference and speculation depends on whether the underlying facts support the conclusion." *Id.*

¶15    To prove that Clegg failed to stop at the command of an officer, the State was required to prove that Clegg (1) "[fled] from or otherwise attempt[ed] to elude a peace officer," (2) after the officer had "issued a verbal or visual command to stop," and (3) that Clegg did so "for the purpose of avoiding arrest." Utah Code § 76-8-305.5(2).[6]

¶16    The third element is the only one at issue in this appeal, and it functions as the intent element for this offense. Intent can

_____

But given our resolution of Clegg's first argument, we need not address his second one.

6. The failure to stop statute has been amended and renumbered since the events giving rise to this case, but because there were no substantive changes to the elements in question, we cite the current version for convenience.

be—and often is—proved by circumstantial evidence. *See Stricklan*, 2020 UT 65, ¶ 105; *State v. Raheem*, 2024 UT App 29, ¶ 25, 546 P.3d 331, *cert. denied*, 550 P.3d 997 (Utah 2024). This is so because there's rarely direct evidence of a defendant's intent. *See Stricklan*, 2020 UT 65, ¶ 105 ("Unless a confession is made by the defendant concerning intent, or unless the court is somehow able to open the mind of the defendant to examine his motivations, intent is of necessity proven by circumstantial evidence." (quotation simplified)); *Raheem*, 2024 UT App 29, ¶ 25 (explaining that intent "will almost always" be supported by circumstantial evidence).

¶17 But this is the somewhat rare case in which there actually is direct and contemporaneous evidence of the defendant's intent. As noted, the offense at issue allegedly occurred when Clegg did not stop at Officer's command. That interaction was caught on Officer's body camera, and that video shows that when Officer ordered Clegg to stop, Clegg repeatedly and emphatically responded that he was frustrated that his motorhome and truck had been impounded earlier that day. In a conversation just a few minutes later in the police vehicle, Clegg expressed surprise when Officer told him that he was being arrested, asking, "For what?" When Officer then asked Clegg why he didn't stop when Officer "told [him] to stop," Clegg responded, "Because you just impounded my vehicle, the cops did. Illegally." Thus, there is direct evidence in this record (obtained in the very moments in question) showing that the reason Clegg did not stop was that he was frustrated at law enforcement seizing his motorhome and truck. But there is no direct evidence showing that Clegg instead acted out of a desire to avoid arrest, which is the specific intent that is required by the controlling statute.

¶18 We of course recognize that the jury wasn't required to take Clegg's assertions at face value. As with other evidentiary questions, the jury could conclude otherwise based on its

assessment of the evidence before it, including circumstantial evidence.

¶19    In denying Clegg's motion to arrest judgment, the district court seems to have concluded that the jury could find the requisite intent simply because Clegg consciously ignored Officer's commands. In the court's view, "the jury was well within the bounds of reason[] to infer [Clegg's] mental state and that he purposefully turned away from the officers, ignoring their commands to stop for the purpose of avoiding arrest." But in a past case, we held that "the statute implicitly requires the [State] to present evidence supporting an inference that [the defendant] thought he was at risk for arrest and was therefore motivated to flee," reasoning that without such a requirement, "the specific intent element would be rendered largely superfluous." *Salt Lake City v. Gallegos*, 2015 UT App 78, ¶¶ 7–8, 347 P.3d 842; *see also State v. Young*, 2015 UT App 286, ¶ 12, 364 P.3d 55. In light of this, we then held that the State must present evidence "in addition to the flight itself." *Gallegos*, 2015 UT App 78, ¶ 7. This is so because, "like mere presence at the scene of a crime, flight by itself is not sufficient to establish guilt but is merely a circumstance to be considered with other factors as tending to show a consciousness of guilt and therefore guilt itself." *Id.* (quotation simplified).[7]

---

7. We recognize the possibility that the manner of flight may, in some instances, arguably constitute separate evidence, apart from the mere act of fleeing, sufficient to support a reasonable inference that the defendant did have the requisite intent. For example, if a defendant took extreme efforts in an attempt to get away from officers (such as driving away at high speeds or leading officers on an extended chase), perhaps this could support an inference that the defendant thought that he or she was about to be arrested and was thus fleeing to avoid arrest. But nothing like that

(continued…)

¶20 In such cases, the circumstantial evidence that the State has commonly pointed to was the defendant's conduct at the time that officers arrived. When presented with such arguments, we've considered whether the conduct in question would support a reasonable inference that the defendant thought that he or she was in danger of being arrested—and, thus, whether the defendant's decision to flee was prompted by the intent to try avoiding that arrest. In *State v. Young*, 2015 UT App 286, ¶ 7, 364 P.3d 55, for example, we held that because the defendant was driving under the influence of alcohol, the jury could reasonably infer that the defendant thought he was at risk for arrest and fled in an attempt to avoid that arrest. By contrast, in a recent case, we held that where the defendant was simply kayaking without a life jacket, it would not be reasonable to infer from that conduct that the defendant fled to avoid arrest. *See State v. Nelson*, 2024 UT App 75, ¶ 17 & n.4, 550 P.3d 495, *cert. granted*, 561 P.3d 688 (Utah Nov. 19, 2024) (No. 20240767). In another case, we similarly held that it was not reasonable to infer that the defendant fled to avoid arrest where the defendant was simply intoxicated in public. *See Gallegos*, 2015 UT App 78, ¶ 11.

¶21 In this case, the State makes a similar offense-derived argument, contending that when Clegg refused to stop at Officer's command, the jury could reasonably infer that Clegg was motivated by the desire to avoid being arrested for the offense of being a pedestrian improperly on a roadway.

¶22 In the briefs, the parties have vigorously disputed whether Clegg was even committing this offense at the time in question. That offense requires proof that a pedestrian "walk[ed] along or on an adjacent roadway" where a "sidewalk [is] provided and its

---

occurred in this case. Clegg was on foot and didn't run away, and he was placed in handcuffs less than a minute after the officers arrived.

use is practicable"; failed to walk "on the shoulder, as far as practicable from the edge of the roadway" where a "sidewalk is not provided"; or failed to "walk as near as practicable to the outside edge of the roadway" or "on the left side of the roadway facing traffic" if "a sidewalk or a shoulder is not available." Utah Code § 41-6a-1009(1)–(3). In Clegg's view, "there was no evidence that a sidewalk existed," and the evidence showed that he was permissibly "walk[ing] on the shoulder of the road." But in the State's view, Clegg violated this statute because he could have walked on the nearby "pedestrian walkway"; alternatively, the State contends that Clegg violated the law by walking too "close to the edge of the roadway."

¶23 We have no basis for concluding that Clegg did not commit this offense. At the close of trial, the jury convicted Clegg of this charge, and Clegg hasn't argued on appeal that there was insufficient evidence to support that conviction. But even so, and even if we accept the premise that Clegg can be presumed to have known the intricacies of this particular offense, we still recognize that it may not have been obvious to Clegg at the time that he was violating the law by either not walking on the nearby pathway or instead by walking a touch too close to the road itself.

¶24 But more importantly, the offense in question in this appeal isn't the offense of walking on the wrong part of the road; rather, what's at issue is the offense of failing to stop at the command of an officer. And again, that offense is not a strict liability offense, but it instead requires proof that Clegg failed to stop "for the purpose of avoiding arrest." *Id.* § 76-8-305.5(2). And as indicated, our past cases have interpreted that element—including, of note, the legislature's use of the word "arrest"—at face value.

¶25 The offense of improperly walking down a roadway is only an infraction. *See id.* § 41-6a-1009(9)(a). While the State points out that an officer *can* arrest someone for an infraction if it's

committed in the officer's presence, *see id.* § 77-7-2, the question here is whether it was reasonable to infer that Clegg didn't stop because he "thought he was *at risk for arrest* and was therefore motivated to flee," *Gallegos*, 2015 UT App 78, ¶ 7 (emphasis added). On appeal, Clegg argues that as a matter of common experience, officers do not ordinarily arrest people for mere infractions unless prompted by something more. In Clegg's view, "a reasonable person would be more likely to expect to receive a ticket." That comports with our experience too, and it likewise comports with the evidence presented in a recent case that also involved an infraction. *See Nelson*, 2024 UT App 75, ¶ 17.

¶26　But we don't see what the "something more" in this case would be that would make an arrest for this infraction likely. No one has claimed that Clegg had an outstanding warrant and might have been motivated to flee for that reason. No one has claimed that Clegg had just committed some other offense and might have been worried that the officers would arrest him for that one. And even as far as infractions go, Clegg could have reasonably believed that this one was decidedly benign. Again, Clegg was doing nothing more than walking down the road. Even if it were true that he should have been walking on the nearby pathway or instead closer to the edge of the road—indeed, even if it were true that he had at one point been walking down the middle of this road—it still strains credulity to suggest, as the State does in this appeal, that Clegg had reason to think that he faced the realistic possibility of being arrested for walking in the wrong part of the road.

¶27　Indeed, the State's own evidence suggests as much. One of the officers later testified that he and his partner were sent to the scene because of a potential "safety hazard," which seems different from a report of a "crime in progress" or something similar. And to the extent that this was about safety (whether it be of Clegg or other drivers), that concern would have been

ameliorated once Clegg was no longer walking on that part of the road, which seems a far cry from a situation naturally leading to an arrest. Moreover, during the few moments in which Officer spoke with Clegg before putting him in handcuffs, Officer didn't say anything about Clegg committing any offense or being subject to arrest. And again, from Clegg's conduct and subsequent statements, it seems clear enough that Clegg didn't think that he was in any danger of being arrested for walking down the road.

¶28   In short, whether it was against the law for Clegg to be walking where he was walking is one question. Whether there was a realistic possibility that Clegg might be arrested for walking where he was walking is another question. Whether Clegg actually understood that there was a realistic possibility that he might be arrested for this is yet another question. And whether this understanding was the thing that motivated Clegg to ignore Officer's commands and keep walking is yet another question still.

¶29   On these facts, we agree with Clegg that there was simply no evidentiary support for a non-speculative and reasonable inference that Clegg failed to stop for the specific purpose of avoiding arrest. We therefore conclude that the district court erred in denying Clegg's motion to arrest judgment.

CONCLUSION

¶30   For the foregoing reasons, we reverse the district court's denial of Clegg's motion to arrest judgment. We accordingly vacate Clegg's conviction for failing to stop at the command of an officer.

———————